### TEEVAL, Inc. v. CITY OF NEW YORK et al.

United States District Court
S. D. New York.

Oct. 27, 1949.

See also, 88 F.Supp. 652.

Shanley & McKegney, New York City, Osborne A. McKegney and Robert S. Fougner, New York City, of counsel, for plaintiff.

John P. McGrath, Corporation Counsel, New York City, Nathan W. Math, Alfred Weinstein, New York City, and Anthony Curreri, Elmhurst, N. Y., of counsel for defendants.

Barney Rosenstein, New York City, for New York Tenant Councils on Rent and Housing, as amicus curiæ

RYAN, District Judge.

Plaintiff, in this action for a declaratory judgment, moves upon the complaint and affidavits and before answer, for an interlocutory injunction, "restraining and enjoining, insofar as plaintiff is concerned, the defendants * * * and their representatives * * * from putting into effect or operation or execution, or permitting to become effective or operative, and from enforcing in whole or in part a local law of the defendant, City of New York, adopted October 7, 1949, effective that date * * * until ninety (90) days after the final hearing and determination of this action * * *."

Defendants move for an order staying all proceedings herein on the ground that an

action has been instituted in the Supreme Court of the State of New York for a declaratory judgment on the same issues.

The complaint and moving affidavits allege the following facts, which are not put in issue by defendants on this motion.

Plaintiff is the owner and landlord of an apartment house, premises No. 1125 Park Avenue, Borough of Manhattan, City and State of New York. The rents for plaintiff's housing accommodations were frozen at the rents of March 1, 1943, Emergency Price Control Act of 1942, 56 Stat. 23, 50 U.S.C.A.Appendix, § 901 et seq.; OPA, New York City Rent Regulation for Housing, 8 Fed.Reg. 13914. Plaintiff registered these rents pursuant to law. The Office of Price Administration and its successor agency, the Office of Housing Expediter, have since continuously exercised control over the rentals. Plaintiff, on May 17, 1949, filed application for an increase in rents under Section 825.-25(a) (18) of the "Controlled Housing Rent Regulation for New York City Defense-Rental Area" (14 Fed.Reg. 2234), which was promulgated by the Housing Expediter on May 3, 1949. Total annual rent increases of approximately $31,000 were granted by the Housing Expediter on this application, September 27 and 30, 1949.

The City Council of the City of New York, on October 7, 1949, enacted a local, city law, known as the "Sharkey Rent Control Law" which by its terms became effective immediately. Section 6(c) of this law freezes the rents of "apartments" at the rent received on March 1, 1949, subject to adjustment by the defendant, the City Housing Rent Commission, "to such amount as it may deem just and reasonable consistent with the emergency." This section also provides that "it shall be unlawful for any person to demand, accept or receive from any tenant for the use or occupancy of any apartment a rent theretofore greater than the rent which was being received by the landlord for said apartment on March 1, 1949, unless the Commission shall by appropriate order authorize the collection of a higher rent for said apartment." The definition of "apartment" in this law is coincident with that of "controlled housing accommodations" in the federal law and

the regulations excepting hotels and rooming houses only. Section 6(1) of the city law provides for punishment by fine, imprisonment, or both for violations of the law, the pertinent portion reading: "* * * any person who by himself or by another violates any of the provisions of this section or any rule, regulation or order of the Commission promulgated pursuant thereto shall be subject to a fine not exceeding the sum of five hundred dollars or to imprisonment for a term not to exceed ninety days or both."

On October 7, 1949, this court granted plaintiff, on its *ex parte* application, a temporary restraining order restraining defendants from enforcement of this local law pending the hearing of plaintiff's motion, upon the condition that plaintiff collect, segregate and deposit in escrow all rental increases granted by the Housing Expediter on September 27 and 30, 1949, which amounts the local law makes it illegal to collect until approval by the Commission. This temporary restraining order has been continued upon these same conditions pending final determination of plaintiff's motion.

■■■ (1) Defendants urge that this court is without jurisdiction because it affirmatively appears that the matter in controversy does not exceed the sum of $3,000 exclusive of interest and costs, 28 U.S.C.A. § 1331. This argument is premised on the fact that the monthly rent roll for the controlled housing accommodations as of March 1, 1949, stood at $16,517.91 and the increased monthly rental, effective September 27, 1949 by order of the Housing Expediter fixed the maximum in the sum of $19,512.79, an increase of $2,994.88. The fallacy of this lies in the fact that plaintiff claims not only that it has been deprived by the municipal enactment of the increase granted for the one month already accrued, between September 27 and the commencement of this action, but that this local legislation attempts to take from it the right to collect all federally established lawful rent in excess of the March 1, 1949 rent. This prohibition applies to all unpaid rents, to all rents presently accruing and to all future rents, unless and until the City Rent Commission makes its certification—and thereafter it applies to the extent that such certification will be less than the

rent approved by the Housing Expediter. Aside from the fact that plaintiff contends that the increased monthly rental so approved exceeded, on October 7, 1949 the rentals of March 1, 1949 by $4,114.69, the increment in the value of the realty owned by plaintiff arising from a permissive monthly increase in rent income at least is a question of fact to be determined on trial; it probably would be far in excess of $3,000. The amount in controversy should be determined from the standpoint of the plaintiff. Central Mexico Light & Power Co. v. Munch, 2 Cir., 116 F.2d 85. Plaintiff does not seek to aggregate separate claims vested in divers owners, and Fox v. 34 Hillside Realty Corp., D.C., 79 F.Supp. 832, is not applicable, for the facts are not analogous. The jurisdictional amount is properly pleaded and sufficiently established.

(2) Defendants' motion for a stay of all proceedings herein must be denied.

■ We are not concerned with the legality or constitutionality of the Sharkey Rent Control Law as measured in terms of local and state law. It may well be that this legislation is in violation of Article IX, Section 12 of the New York State Constitution, of Section 11(2) of the City Home Rule Law, McK.Consol.Laws, c. 76, and of Chapter 487 of the New York Laws of 1949, and that the City of New York is under state law without power to enact this rent control legislation. This, however, is a matter for state court decision. This court may grant final judgment to plaintiff, only if it is found that the local law of the City, here questioned, is repugnant to or conflicts with the letter or policy of the federal statute. Southern Pacific Co. v. State of Arizona, 325 U.S. 761, 766, 65 S.Ct. 1515, 89 L.Ed. 1915.

It might be established on trial, that Congress has acted with intent to preempt the entire field of rent control of housing accommodations in defense-rental areas to the exclusion of state or local regulation. Since the Emergency Price Control Act of 1942 which was to be effective from January 30, 1942 through June 30, 1947, the date of expiration of the 1946 amendment, Price Control Extension Act of 1946, 60 Stat. 664, 79th Cong. 2d Sess., there was embodied in the enactments an exclusive jurisdiction provision specifically providing that "such housing accommodations shall not be subject to rent control by any State or local government." 50 U.S.C.A.Appendix, § 902(b).

The Housing and Rent Act of 1947, Public Law 129 of 1947, and Housing and Rent Act of 1947, as amended, Public Laws 422 and 464 of 1948, 50 U.S.C.A.Appendix, §§ 1881 et seq., 1902, did not contain such a provision against state or local rent control. The elimination of the exclusive jurisdiction clause permitted state or local legislation "so long as local legislation in that field does not conflict with the letter or policy of any Federal enactment. Cf. Block v. Hirsch, 265 U.S. 135, 41 S.Ct. 458, 65 L.Ed. 865, 16 A.L.R. 165; Gilbert v. State of Minnesota, 254 U.S. 325, 41 S. Ct. 125, 65 L.Ed. 287; Bethlehem Steel Co. v. New York State Labor Relations Bd., 330 U.S. 767, 67 S.Ct. 1026, 91 L.Ed. 1234." Matter of Tartaglia v. McLaughlin, 297 N.Y. 419, 425, 79 N.E.2d 809. But, when the Housing and Rent Act of 1949, Public Law 31, 81st Cong. was passed to extend federal control of rents from April 1, 1949 to June 30, 1950, specific provisions were enacted providing for state rent control or state or local decontrol.

Section 204(j) provides the means by which local rent control or decontrol may be accomplished. Section 204(j)(1) provides for the supplanting of federal rent control by state control upon the enactment of appropriate state legislation and advisement thereof by the Governor to the Housing Expediter, "that the legislature of such State has adequately provided for the establishment and maintenance of maximum rents, or has specifically expressed its intent that State rent control shall be in lieu of Federal rent control, with respect to housing accommodations within defense-rental areas in such State * * *." The New York State Legislature has not adopted state-wide legislation conforming to these provisions so that state control has not been so accomplished.

A further method of achieving federal rent decontrol is provided by Section 204 (j)(2): "If any State by law declares

that Federal rent control is no longer necessary in such State, or any part thereof and notifies the Housing Expediter of that fact, the Housing Expediter shall immediately make public announcement to the effect that he has been so advised." New York has not made any such legislative declaration.

And still another method of terminating federal control is provided by Section 204 (j)(3): "The Housing Expediter shall terminate the provisions of this title in any incorporated city, town or village upon receipt of a resolution of its governing body adopted for that purpose in accordance with applicable local law and based upon a finding by such governing body reached as the result of a public hearing held after 10 days' notice, that there no longer exists such a shortage in rental housing accommodations as to require rent control in such city, town or village: *Provided, however,* That such resolution is first approved by the Governor of the State before being transmitted to the Housing Expediter: *And provided further,* That where the major portion of a defense-rental area has been decontrolled pursuant to this paragraph (3), the Housing Expediter shall decontrol any unincorporated locality in the remainder of such area." Such a resolution has not been adopted by the City of New York "in accordance with applicable local law."

The above provide a detailed plan for state rent control and state or local decontrol. They do not, however, make any provision authorizing or prohibiting local rent controls in excess of those provided for by federal statute. This is the question for determination: has Congress so preempted the field of rent control as to prohibit the enactment of local law such as the one here involved, which is or may be interpreted to be inconsistent with the federal law?

Plaintiff maintains that this municipal legislation conflicts with the Housing and Rent Act of 1949, particularly in the following respects:

A—It deprives plaintiff of a fair net operating income as granted by the orders of the Housing Expediter of September 27 and 30, 1949.

B—It attempts to set up City rent control without compliance with the provisions of the federal statute (Sec. 204(j)).

C—It deprives realty owners of rental adjustments granted under federal law.

D—It makes unlawful the collection of rents made lawful by action of the Housing Expediter.

E—It hampers the proper administration of the Housing and Rent Act of 1949 and the regulations issued thereunder.

Enough is here alleged by plaintiff to raise the question—to be resolved after issue has been joined—of whether the municipal law conflicts with the "supreme law of the land" as enacted by Congress.

The court will also be required to determine whether the enactment and enforcement of the City rent law is prohibited by federal legislation. And there is the additional issue of whether plaintiff has been unlawfully deprived of property rights created by federal law.

■ The claims asserted by plaintiff arise under the Constitution and laws of the United States and the "correct decision depends upon the construction of either." Cohens v. Com. of Virginia, 6 Wheat. 264, 379, 5 L.Ed. 257. Plaintiff's allegations present federal questions and it is entitled to be heard in this court.

Even, should these issues be litigated in the action instituted in the New York Supreme Court on the same day that this instant action was filed, these federal questions may be finally determined only in a federal court. The federal questions presented make it unnecessary to first exhaust the judicial remedies of state courts before resort to federal courts, Lane v. Wilson, 307 U.S. 268, 274, 59 S.Ct. 872, 83 L.Ed. 1281; Bacon v. Rutland R. Co., 232 U.S. 134, 34 S.Ct. 283, 58 L.Ed. 538, and plaintiff is not required to first test the validity of the local legislation in the state court. Pacific Telephone & Telegraph Co. v. Kuykendall, 265 U.S. 196, 205, 44 S.Ct. 553, 68 L.Ed. 975. To stay this action would only delay the prompt determina-

tion of claims based upon federally created rights.

(3) Plaintiff's application for a temporary injunction must be denied in the absence of an adequate showing of irreparable injury.

It cannot, at this time, be said that the local law will operate to deprive plaintiff of any property rights. The order of the Housing Expediter does not automatically increase the rents of the various apartments of plaintiff. Rather, it authorizes plaintiff to demand an increase of rents. The local law does not empower the City Housing Rent Commission to sue on behalf of the tenants to recover rental charges collected in excess of those authorized by local law. The only sanctions are those in Section 6(1)—fines, or imprisonment, or both.

Plaintiff says that cases cited by defendants are not in point because they deal with situations in which federal courts of equity declined to enjoin the enforcement of criminal statutes. Lawrence v. St. Louis-S. F. Ry., 274 U.S. 588, 47 S. Ct. 720, 71 L.Ed. 1219; Douglas v. City of Jeannette, 319 U.S. 157, 63 S.Ct. 882, 87 L.Ed. 1324, 146 A.L.R. 81; Spielman Motor Sales Co. v. Dodge, 295 U.S. 89, 55 S.Ct. 678, 79 L.Ed. 1322. In plaintiff's view the local law is a civil rather than a penal statute. But, anomalously, plaintiff further decries the fact that if it demands, receives or accepts rent in excess of that permitted by local law, it risks a jail sentence.

The Supreme Court in Hynes v. Grimes Packing Co., 337 U.S. 86, 69 S.Ct. 968, 971, 93 L.Ed. 1231, recently laid down the test to be applied when injunctive relief is sought in federal courts against the enforcement of allegedly invalid laws or regulations, when it said: "If respondents show that they are without an adequate remedy at law and will suffer irreparable injury unless the enforcement of the alleged invalid regulation is restrained, a civil court will enjoin. (n. See Terrace v. Thompson, 263 U.S. 197, 214, 44 S.Ct. 15, 17, 68 L.Ed. 255; Petroleum Exploration v. Public Service Commission of Kentucky, 304 U.S. 209,

217–219, 58 S.Ct. 834, 838–839, 82 L.Ed. 1294.) While ordinarily criminal prosecutions will not be restrained even under an invalid statute (n. Watson v. Buck, 313 U. S. 387, 61 S.Ct. 962, 85 L.Ed. 1416; Ex parte Sawyer, 124 U.S. 200, 8 S.Ct. 482, 31 L.Ed. 402), a civil action will lie in exceptional circumstances that make an injunction necessary to effectually protect property rights." 337 U.S. at pages 98–99, 69 S.Ct. at page 977.

Plaintiff has failed to establish to the satisfaction of the court that it will suffer irreparable injury if the injunctive relief sought is not granted. It has taken no action to secure approval of the increases granted by the Housing Expediter from the City Housing Rent Commission. It asserts that approval by the Commission may take "many, many months." There is no justification for this court to speculate on the time that may be required by the Commission to pass on plaintiff's increases, or whether increases approved by the Commission may be less than those allowed by the Housing Expediter, when plaintiff has not sought to avail itself of its rights under local law.

█ Defendants have no power under local law to attempt to restrain plaintiff from collecting the increases allowed by the Expediter's office. Plaintiff has the choice of awaiting the approval by the Commission or of collecting increased rents at the risk of prosecution by defendants. The statement that defendants stand ready to enforce the local law in accordance with their sworn duty is not sufficient to establish that irreparable injury to plaintiff is "clear and imminent." A. F. of L. v. Watson, 327 U.S. 582, 593, 66 S.Ct. 761, 90 L.Ed. 873; Watson v. Buck, supra. If plaintiff should adopt the latter course of action and should be prosecuted therefor in the local courts, it can assert all its present constitutional objections to the local law in that proceeding.

Another point which has been considered by the court is the possibility that the injury which might flow from the threat of enforcement of this allegedly unconstitutional regulatory statute with penalties, might serve to forbid the risk

of challenge. Such a situation has generally been recognized as irreparable and sufficient to justify the intervention of a court of equity. Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714, 13 L.R.A., N.S., 932, 14 Ann.Cas. 764; Terrace v. Thompson, supra; Petroleum Exploration v. Public Service Commission of Kentucky, supra. But, plaintiff need not risk severe penalties by charging the increased rent for all sixty-seven apartments involved, in order to challenge the validity of the local law. By charging the increased rent for just one apartment for just one month, it will violate the law and therefore a test case of the validity of this law will be made out, the penalty for which upon conviction will be neither severe, nor so burdensome as to prevent the challenge sought.

Plaintiff urges as an element of irreparable injury that even should the Commission approve the rental as fixed by the Housing Expediter, it will be unable to recover the increase between October 27, 1949 and the date of certification by the Commission. This follows, plaintiff maintains, because the municipal law does not provide for or authorize certification and collection of the increase retroactively. Assuming, *arguendo*, this to be so, it does not appear that this loss will result in irreparable damage. It may also be observed that while the muncipal law does not in terms authorize the demand and collection of increased rents retroactively, it contains no express prohibition against it.

Then, too, plaintiff contends that if collection of the permissive increase is delayed by municipal law until the final determination of this action, plaintiff will, even if successful, have sustained irreparable injury in that such rentals "will be permanently lost." To support this plaintiff says that "tenants move, tenants die, tenants now solvent become insolvent, and for countless other reasons rent due months before cannot be collected." The court can find no reason to impute to plaintiff's tenants dishonesty and plaintiff does not so charge; it is to be assumed that they will fully discharge their obligations when legally required to do so. The rentals in plaintiff's accommodations indicate that the tenants are persons of substantial means and financial responsibility. Every person is presumed solvent and every debt collectible.

The Housing Expediter is not a party to this action; he has made no application to intervene. The court is not advised that in his opinion the functioning of the City Housing Rent Commission under this local legislation will impede or impair the operation of his office, or interfere with the performance of the duties imposed on him by federal statute.

The temporary restraining order issued herein is vacated. Plaintiff's motion for a temporary injunction is denied. Defendant's motion for a stay is also denied.