John Hall THOMAS,
Plaintiff-Appellant,

v.

TEXAS STATE BOARD OF MEDICAL EXAMINERS, et al.,
Defendants-Appellees.

No. 85–1559.

United States Court of Appeals,
Fifth Circuit.

Jan. 8, 1987.

John H. Thomas, pro. se.

Susan A. German, Asst. Atty. Gen., Jim Mattox, Atty. Gen., Austin, Tex., for defendants-appellees.

Before GOLDBERG, RUBIN, and POLITZ, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

■ A federal court has "no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given," Chief Justice Marshall wrote for the Supreme Court in *Cohens v. Virginia*[1] 165 years ago. While this dictum does not state an inexorable rule, and federal courts yield jurisdiction to state courts when necessary to support constitutional principles of federalism and attendant respect for state court jurisdiction, it contains a basic precept that still commands attention.[2] Federal courts must not abdicate the decision of federal questions.

■ Invoking 42 U.S.C. § 1983, a doctor of medicine who had been convicted of a federal crime challenges the revocation of his medical license by a state administrative board. The district court abstained from deciding the federal issues because the plaintiff had not sought the "remedies" available in state court before bringing suit in federal court although, at the time the federal suit was filed, no state action was pending. Because no state action was pending and exhaustion of state remedies is not required as a prerequisite to § 1983 cases, abstention under the principles of *Younger v. Harris*,[3] as extended, was not appropriate. We, therefore, reverse and remand.

## I.

The Texas Board of Medical Examiners, a defendant in this action, revoked the medical license of Dr. John Hall Thomas.

Thomas was later indicted on 61 counts of illegally dispensing a schedule II controlled substance and convicted on his plea of guilty. His conviction was affirmed on appeal.[4]

Thomas initially sought review of his license revocation in a Texas state district court but later dismissed his state court suit. He then filed this action pro se, alleging that the Texas State Board of Medical Examiners and each of its members, both individually and in his official capacity, had carried on a continuing vendetta against him and had violated his right to procedural due process by giving him inadequate notice of the hearing held by the Board, by conducting an inadequate hearing, and by failing to conform to the requirements of the Texas Administrative Procedure Act. Thomas also complains that his fourth amendment rights were violated by seizure of certain documents that the Board would not let him use for cross-examination; his first amendment rights were violated because the Board asked him religious questions; his fifth amendment rights were violated because the Board used the writings of the state triplicate prescription program against him; and that Tex.Rev.Civ.Stat. art. 4495b §§ 4.02, 4.05 (Vernon Supp.1986) are unconstitutional. He seeks the reinstatement of his medical license, declaratory relief, and damages. On motion of the defendants, the district court held that it should abstain from deciding the case, relying on *Younger v. Harris*[5] and *Huffman v. Pursue, Ltd.*[6]

## II.

*Younger v. Harris* held that federal courts may not enjoin pending state crimi-

---

1. 6 Wheat. 264, 404, 5 L.Ed. 257 (1821). *See also United States v. Will*, 449 U.S. 200, 216 n. 19, 101 S.Ct. 471, 481 n. 19, 66 L.Ed.2d 392 (1980).

2. *Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.*, 460 U.S. 1, 15, 103 S.Ct. 927, 936, 74 L.Ed.2d 765 (1983) (quoting *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976) (quoting *McClellan v. Carland*, 217 U.S. 268, 282, 30 S.Ct. 501, 504, 54 L.Ed. 762 (1910))).

3. 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

4. *United States v. Thomas*, 717 F.2d 1397 (5th Cir.1983).

5. 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

6. 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975).

nal prosecutions even when the plaintiff contends that the prosecution violates his federal constitutional rights. The *Younger* principle was extended to some types of civil proceedings by *Huffman*, in which the Supreme Court refused to permit a federal court to enjoin a state judgment, pursuant to a state nuisance statute and still susceptible to review on appeal, that barred a theater owner from showing films even though the films had not been adjudged obscene. The state court proceeding, the Court held, was "in important respects ... more akin to a criminal prosecution than are most civil cases" since the state was a party to the action and the action was in aid of, and closely related to, criminal statutes prohibiting dissemination of obscene materials.[7] *Huffman* thus holds that federal courts should refrain from entertaining challenges to pending state civil proceedings in circumstances in which the federal action is regarded as an improper intrusion on the right of a state to enforce its laws in its own courts.[8]

` The Supreme Court has also applied the *Younger*-abstention principle "to state administrative proceedings in which important state interests are vindicated, so long as in the course of those proceedings the federal plaintiff would have a full and fair opportunity to litigate his constitutional claim."[9] In Ohio *Civil Rights Commission v. Dayton Christian Schools, Inc.,*[10] the plaintiff sought to enjoin a pending state administrative proceeding. The Court emphasized that the *Younger* principle applies when such state proceedings are pending, saying:

> The lower courts have been virtually uniform in holding that the *Younger* principle applies to *pending* state administrative proceedings in which an important

state interest is involved.... The application of the *Younger* principle to *pending* state administrative proceedings is fully consistent with *Patsy v. Florida Board of Regents* ... which holds that litigants need not exhaust their administrative remedies prior to bringing a § 1983 suit in federal court. (Emphasis added.)[11]

In some respects, Thomas' situation is similar to that of the plaintiffs who sought federal relief in *Huffman* and in *Dayton Christian Schools.* Although the proceeding for revocation of a doctor's license is civil, it is coercive and the state, through its Board of Medical Examiners, possesses a great interest in the outcome of the litigation, for it seeks to assure the competency of physicians who practice in its borders. Thomas' circumstances, however, differ in two significant particulars. In both *Huffman* and *Dayton Christian Schools,* as in *Younger,* state proceedings were pending, and in each the plaintiff sought to enjoin those proceedings. While in *Huffman* the state trial court had already considered the case and rendered judgment, the judgment had not become final and non-appealable before Huffman resorted to federal district court and obtained an order permanently enjoining the execution of the portion of the state court's order found to violate his constitutional rights. The Supreme Court held that, as "a necessary concomitant of *Younger* ... a party ... must exhaust his state appellate remedies before seeking relief in the [federal] District Court...."[12] The Court noted that such an expansion of *Younger* was necessary to avoid the disruptive effect of permitting federal intervention prior to the completion of state appellate proceedings. "Intervention at

7. 420 U.S. at 604, 95 S.Ct. at 1208.

8. C. Wright, Federal Courts 4th ed. § 52A, p. 320.

9. *Ohio Civil Rights Commission v. Dayton Christian Schools, Inc.,* —— U.S. ——, 106 S.Ct. 2718, 2723, 91 L.Ed.2d 512 (1986). *See also Middlesex County Ethics Committee v. Garden State Bar Assn.,* 457 U.S. 423, 432–34, 102 S.Ct. 2515,

2521–22, 73 L.Ed.2d 116 (1982); *Gibson v. Berryhill,* 411 U.S. 564, 576–77, 93 S.Ct. 1689, 1696–97, 36 L.Ed.2d 488 (1973).

10. —— U.S. ——, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986).

11. —— U.S. at —— n. 2, 106 S.Ct. at 2723 n. 2.

12. *Id.,* 420 U.S. at 608, 95 S.Ct. at 1210.

the later stage," it said, "is if anything more highly duplicative, since an entire trial has already taken place, and it is also a direct aspersion on the capabilities and good faith of state appellate courts."[13] A case like Thomas', in which no state court trial has taken place and no injunction against a pending state proceeding is sought, does not give rise to the same concerns.

■ "Administrative proceedings looking toward the revocation of a license to practice medicine may in proper circumstances command the respect due court proceedings."[14] Thus, in *Dayton Christian Schools*, which involved the important state interest of the elimination of sex discrimination among teachers, the Supreme Court found abstention during the pendency of state administrative proceedings proper. Such deference, however, is no longer due when the administrative proceedings have ended. The mere availability of state judicial review of state administrative proceedings does not amount to the pendency of state judicial proceedings within the meaning of *Huffman*.

■ A person who contends that his constitutional rights have been violated by a state administrative proceeding is not required to resort to an appeal to state courts before seeking relief in a federal forum. At the time this suit was filed, no state action was pending. Neither exhaustion of state administrative remedies, which the Supreme Court held unnecessary in *Patsy v. Florida Board of Regents*,[15] nor exhaustion of state judicial remedies, which the Court held unnecessary in *Monroe v. Pape*,[16] is a prerequisite to seeking the aid of a federal court to enforce federal constitutional rights. The Court expressly recognized this in *Huffman*, saying:

> By requiring exhaustion of state appellate remedies for the purposes of apply-

ing *Younger*, we in no way undermine *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). There we held that one seeking redress under 42 U.S.C. § 1983 for a deprivation of federal rights need not first initiate state proceedings based on related state causes of action. 365 U.S., at 183, 81 S.Ct., at 482. *Monroe v. Pape* had nothing to do with the problem presently before us, that of the deference to be accorded state proceedings which have already been initiated and which afford a competent tribunal for the resolution of federal issues.

Our exhaustion requirement is likewise not inconsistent with such cases as *City Bank Farmers' Trust Co. v. Schnader*, 291 U.S. 24, 54 S.Ct. 259, 78 L.Ed. 628 (1934), and *Bacon v. Rutland R. Co.*, 232 U.S. 134, 34 S.Ct. 283, 58 L.Ed. 538 (1914), which expressed the doctrine that a federal equity plaintiff challenging state administrative action need not have exhausted his state judicial remedies. Those cases did not deal with situations in which the state judicial process had been initiated.[17]

The Court thus affirmed its prior decisions in *City Bank Farmers' Trust Co.* and in *Bacon* which held that the petitioner in a federal equity proceeding need not seek state judicial review of administrative decisions before suing in federal court. Both cases, like the instant case, involved completed administrative orders that had not been challenged through the state appellate procedure. Furthermore, both were "coercive" in nature, in that they involved an estate tax liability order and a state commission order limiting the use of a railroad passenger station respectively. While the opinions in each of these cases turned upon the distinction between "legislative" and "judicial" functions of state appellate

---

**13.** *Id.*

**14.** *Gibson v. Berryhill*, 411 U.S. 564, 577, 93 S.Ct. 1689, 1697, 36 L.Ed.2d 488 (1973).

**15.** 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982).

**16.** 365 U.S. 167, 183, 81 S.Ct. 473, 482, 5 L.Ed.2d 492 (1961).

**17.** *Huffman v. Pursue, Ltd.*, 420 U.S. at 610 n. 21, 95 S.Ct. at 1211 n. 21.

review, they reach the same result we reach here.

■ Thomas did invoke state judicial relief, but he dismissed that suit before filing this federal action. A litigant who initiates state court review of a state administrative decision and then changes his mind and voluntarily dismisses the suit is not irrevocably bound either to continue his action in state court or to forfeit his right to vindicate his constitutional rights in a federal court. When no state proceedings are pending, a federal action does not interfere with or insult state processes and "the policies on which the *Younger* doctrine is premised 'have little force....' "[18]

Thomas seeks three forms of relief: restoration of his license, which would nullify the state administrative proceeding; declaratory relief; and damages. Two years after it had decided *Huffman,* the Supreme Court held in *Wolley v. Maynard*[19] that the *Huffman* doctrine did not bar a person who had been convicted of violating a state statute from seeking prospective relief to preclude further prosecution. That suit, the Court reasoned, was "in no way 'designed to annul the results of a state trial since the relief sought [was] wholly prospective.' " Although part of the relief sought by Thomas would vitiate the Board of Medical Examiners action, he also seeks to recover damages for alleged violation of his rights. Such damages might be accorded independently of his claim to reinstatement of his license and, as we held in *Bishop v. State Bar of Texas,* represent "a species of relief wholly unaffected by *Younger.*"[20] Moreover, some of Thomas' claims are asserted against the Medical Board members individually. Reinstatement of his license would not resolve those claims.

We do not consider whether some or all of the claims stated by Thomas are such that the relief he seeks may not be granted or whether any of his claims are barred by res judicata.[21] These issues are not presently before us. We hold only that the federal district court should not abstain from deciding the issues presented by this case.

For these reasons, the judgment of dismissal is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.

---

18. *Concerned Citizens of Vicksburg v. Solls,* 567 F.2d 646, 650 (5th Cir.1978), *quoting Lake Carriers' Association v. MacMullan,* 406 U.S. 498, 509, 92 S.Ct. 1749, 1757, 32 L.Ed.2d 257 (1972).

19. 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977).

20. 736 F.2d 292, 295 (5th Cir.1984).

21. *See Huffman v. Pursue, Ltd.,* 420 U.S. at 607 n. 18, 95 S.Ct. at 1209 n. 18.