**UNITED STATES of America**

v.

**Malcolm Truman ANDERSON.**

**Crim. A. No. 7004.**

United States District Court,
D. New Hampshire.

Nov. 13, 1970.

William Cullimore, Asst. U. S. Atty., Concord, N. H., for plaintiff.

David O. Huot, Normandin, Cheney & O'Neil, Laconia, N. H., for defendant.

## OPINION

BOWNES, District Judge.

Malcolm T. Anderson was indicted for failure to submit to induction in violation of 50 U.S.C. App. § 462(a) (Supp. V 1969). Jury trial was waived, and the case was submitted by agreement of the parties on the defendant's Selective Service file. No other evidence was presented. This case focuses on the scope of judicial review in a situation where a registrant has made out a prima facie case for conscientious objector classification and the Local Draft Board has refused such classification without stating its reasons.

## THE FACTS

The defendant's Selective Service file indicates that he was knowledgeable as to the Selective Service System and scrupulously followed its procedures. He duly registered for the draft with Local Board No. 103, Sharon, Pennsylvania, on September 20, 1962, shortly after his eighteenth birthday. He was classified II–S and remained in that

classification until April 1, 1964, when he received a I–D classification because of his participation in ROTC (Reserve Officers Training Corps) at college. This was changed to II–S in October of 1964, when he voluntarily resigned from the ROTC Program. The defendant was classified I–A by his Local Board on August 10, 1966, and on August 19, 1966, he notified the Local Board by letter of his appointment to VISTA (Volunteers in Service to America). After confirmation of this by a letter from VISTA, the defendant was classified II–A on September 8, 1966.

On July 26, 1967, the Local Board received a letter from the defendant stating that he was leaving the VISTA Program and returning to college. In that letter, the defendant advised the Board that he would be filing Special Form 150 for Conscientious Objector at sometime in the future. In a subsequent letter, he requested a II–S classification because he had returned to college, and he again advised the Local Board that he planned to file Special Form 150 in the future.

The defendant was classified I–A on October 6, 1967, and subsequently met with a Government Appeals Agent on November 1, 1967. At that meeting, he requested a II–S classification and stated that he might request SSS Form 150 when he met with the Local Board. On November 8, 1967, he met with his Local Board and requested a II–S classification until his graduation from college and said he was not applying for SSS Form 150 at this time. The Board granted his request for a II–S classification on the same day.

On April 1, 1968, the defendant did request Special Form 150. He submitted SSS Form 150 on April 11, 1968, along with five letters in support of his claim for a I–O classification. The defendant's Special Form 150 indicates that he became a member of the Presbyterian Church at the age of ten years. That church does not teach its members to oppose war at any time for any reason, but apparently leaves it up to each member to obey his conscience. The file does not indicate whether the defendant regularly attended church services during his involvement with the Selective Service System.

The defendant subsequently requested a personal appearance before the Board when it considered his I–O claim and enclosed additional letters in support of his claim. On July 25, 1968, the Local Board classified the defendant I–A. After receipt of the I–A classification, the defendant asked for a meeting with the Government Appeal Agent before meeting with the Local Board to review his I–O classification. The meeting with the Government Appeal Agent was held September 9, 1968.

In the meantime, the defendant had been ordered to report for a physical examination on September 10, 1968, and, as a result of this examination, was found unacceptable for military service for medical reasons. The defendant then wrote the Local Board requesting that his previous request for a meeting to discuss his I–O classification be cancelled, but he also asked that the Board consider his I–O request and the possibility of counting his work as a child care counselor towards the alternate service time period. The Board informed the defendant in reply that his I–O claim would not be considered unless and until the defendant was found medically acceptable for military service.

On March 23, 1969, the defendant notified the Board that he had undergone corrective surgery on March 13th and he was ordered by the Board to report for a physical examination on May 12, 1969, and found qualified. On May 13, 1969, the defendant requested that his I–O claim be reviewed by the Board with the Appeal Agent present. The Board met on June 11, 1969, with all members and the Appeal Agent present and unanimously agreed not to grant the defendant's request for a conscientious objector classification. No reasons were stated for this refusal. The defendant then personally appeared before the Board on July 9, 1969. The Board refused to re-

open the I–A classification, but again gave no reasons for its refusal. The Appeal Board confirmed the defendant's I–A classification on August 27, 1969, and the defendant was ordered to report for induction on September 17, 1969. His place of induction was transferred to New Hampshire, and on November 14, 1969, at Manchester, New Hampshire, the defendant refused to take the symbolic step forward.

## RULINGS OF LAW

The starting point for the determination of the scope of judicial review is 50 U.S.C. App. § 460(b) (3) (Supp. V 1969) which provides for judicial review after refusal to report for induction:

> *Provided,* That such review shall go to the question of the jurisdiction herein reserved to local boards, appeal boards, and the President only when there is no basis in fact for the classification assigned to such registrant.

In Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428 (1955), the Court held:

> [In conscientious objector cases] the registrant cannot make out a prima facie case from objective facts alone, because the ultimate question in conscientious objector cases is the sincerity of the registrant in objecting, on religious grounds, to participation in war in any form. In these cases, objective facts are relevant only insofar as they help in determining the sincerity of the registrant in his claimed belief, purely a subjective question. In conscientious objector cases, therefore, any fact which casts doubt on the veracity of the registrant is relevant. It is "affirmative evidence * * * that a registrant has not painted a complete or accurate picture * * *." Dickinson v. United States [346 U.S. 389 at page 396, 74 S.Ct. 152, at page 157, 98 L.Ed. 132 (1953)]. In short, the nature of a registrant's prima facie case determines the type of evidence needed to rebut his claim. Id. at 381–382, 75 S. Ct. at 396.

It is essential, therefore, under the guidelines set forth in *Witmer,* that the Court carefully review the evidence to determine whether the defendant has made out a prima facie case.

The evidence in the defendant's Selective Service file makes it clear that he has met the basic requirements for conscientious objector classification set forth in United States v. Seeger, 380 U. S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965). In Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970), the Supreme Court analogized the case before it to *Seeger.* The analogy is applicable here.

> Both Seeger and Welsh were brought up in religious homes and attended church in their childhood, but in neither case was this church one which taught its members not to engage in war at any time for any reason. Neither Seeger nor Welsh continued his childhood religious ties into his young manhood, and neither belonged to any religious group or adhered to the teachings of any organized religion during the period of his involvement with the Selective Service System. At the time of registration for the draft, neither had yet come to accept pacifist principles. Their views on war developed only in subsequent years, but when their ideas did fully mature both made application with their local draft boards for conscientious objector exemptions * * *. Id. at 335–336, 90 S.Ct. at 1794.

The same facts outlined in the quotation above are, in general, applicable to the defendant here. Both Seeger and Welsh, however, had to alter the statement on Special Form 150 that:

> I am, by reason of my religious training and belief, conscientiously opposed to participation in war in any form * * *.

Seeger struck out the words "training and" and inserted quotation marks around "religious." Welsh struck the words "my religious training and" from the statement. Neither Seeger nor

Welsh could affirm or deny believing in a Supreme Being. The defendant here, on the other hand, signed the statement without alteration and clearly indicated his belief in a Supreme Being. In addition, a letter from the campus minister at Clarion State College states:

I have no reservations whatsoever about the genuine concern manifested by Mr. Anderson's position. Neither do I have any basis to doubt, or even question, the sincerity and forthrightness of this man's belief in God.

Since the defendant has clearly made out a prima facie case for a conscientious objector classification, the issue is whether or not the Board's failure to give any reasons for its refusal to grant his I–O claim is grounds for acquittal.

The difficulty that the reviewing Court faces where the Board has given no reasons for its decision is that its search of the evidence becomes a blind groping for any fact that might possibly be grounds for upholding the Board. In conscientious objector cases, a Court can intelligently determine if there is a basis in fact for the classification determined by the Board only if the reason for such determination is stated.

The Fourth Circuit in United States v. Broyles, 423 F.2d 1299 (4th Cir. 1970), and United States v. Perdue, 425 F.2d 1092 (4th Cir. 1970), has squarely held that the Board's failure to give any reasons for its refusal to grant a I–O classification where the defendant has established a prima facie case for such classification is grounds for acquittal. The Court reasoned:

In any case where the board fails to disclose the basis for its decision, we risk blind endorsement of a mistake of law. Where it is clear that a *prima facie* case was established, we conclude that in conscientious objector cases, it is essential to the validity of an order to report that the board state its basis of decision and the reasons therefor, i. e., whether it has found the registrant incredible, or insincere,

or of bad faith, and why. *Broyles, supra,* 423 F.2d at 1304.

The Ninth Circuit in United States v. Haughton, 413 F.2d 736 (9th Cir. 1969), pointed out the difficulties inherent in conscientious objector cases for both the Local Board and the reviewing Court:

In *Seeger,* the Court recognized that "in resolving these exemption problems one deals with the beliefs of different individuals who will articulate them in a multitude of ways." 380 U.S. at 184, 85 S.Ct. at 863. In addition, we are dealing with young people who may not have been required to articulate their beliefs before, or match them to the type of questions in the form 150. These factors make the function of the local board and the reviewing court difficult. *Part of this difficulty will be removed if the local board specifies the reasons for its action.* A Court can then readily determine the propriety of the action it is asked to review. Id. at 742. (Emphasis added.)

The Court went on to hold that the failure of the Board to state reasons for its decision made it impossible for it to determine whether the defendant was properly denied a conscientious objector status and his conviction was reversed.

So also the Second Circuit in United States v. Jakobson, 325 F.2d 409 (2nd Cir. 1963), has held that, since a classification without reasons may have rested on erroneous grounds, a conviction could not stand. It must be noted that the Supreme Court in reviewing *Jakobson,* United States v. Seeger (and *Jakobson*), 380 U.S. 163, 85 S.Ct. 850, 13 L. Ed.2d 733 (1965), affirmed on the grounds:

that the registrant demonstrated that his belief as to opposition to war was related to a Supreme Being. Id. at 187, 85 S.Ct. at 865.

In United States v. Lemmens, 430 F. 2d 619 (7th Cir. 1970), the Seventh Circuit held:

We are persuaded that where the validity of a classification rejecting a

claim as conscientious objector is in issue, and where the registrant described a belief which on its face fulfilled the legal requirements, the board did not state its reason for rejection, and the court can not otherwise determine with any degree of assurance that the decision really made by the board properly supported the rejection and had a basis in fact, the court should hold the classification invalid. Id. at 624.

Although the First Circuit has not yet spoken on this issue, the District Court of Maine has met the problem with a comprehensive and well reasoned opinion. Judge Gignoux held in United States v. Prince, 310 F.Supp. 1161 (D. Me.1970):

> Because neither the Local Board nor the Appeal Board gave any reason for the denial of defendant's claim, the Court cannot determine with any degree of assurance whether there was a proper basis for the decision. In such a case, where no reason has been assigned for the rejection of a conscientious objector claim, and where there is no objective evidence which in itself would justify denial of the claim, the Court is not permitted to speculate as to whether there *may* have been a proper reason for the Board's decision. Id. at 1166.

My review of the cases leads me to the conclusion that, where a defendant has clearly made out a prima facie case for a conscientious objector classification, the Local Board's failure to give any reasons for its refusal to grant the I–O claim is grounds for acquittal.

Since the defendant has established a prima facie case for a conscientious objector classification and since the Local Board and the Appeal Board have not stated any reasons for their denial of such claim, I rule that the order to report for induction was invalid and the defendant is found not guilty.

So ordered.